UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.  07 CR 837 |
| | ) | Judge Elaine E. Bucklo |
| CHRISTOPHER G. KELLY | ) | |

**GOVERNMENT'S CONSOLIDATED RESPONSE TO
DEFENDANTS' PRETRIAL MOTIONS**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United

States Attorney for the Northern District of Illinois, submits the following consolidated response to

the pretrial motions filed by the defendant in this case.  In response, the government states as

follows:

**I.      DEFENDANT'S MOTION TO DISMISS COUNT ONE**

      **A.      Introduction**

Count One of the indictment charges the defendant with a violation of Title 26, United States

Code, Section 7212(a).  In summary, Count One charges the defendant with corruptly obstructing

and impeding, and endeavoring to obstruct and impede, the IRS in correctly identifying, assessing,

and collecting the defendant's taxes.  Count One ¶ 2.  Count One is charged under what is

commonly referred to as the "omnibus" clause of Section 7212(a) and which specifically

criminalizes "corruptly. . . obstruct[ing] or imped[ing], or endeavor[ing] to obstruct or impede, the

due administration of [the tax laws]."

More specifically, the defendant is charged with corruptly impeding the IRS' ability to

ascertain and collect his taxes through a variety of means, including: (a) using business funds to pay

for personal expenses and thereafter concealing the payments through improper booking of

payments as well as the creation of document falsely describing the nature of the payments; (b) structuring cash withdrawals from the bank for personal expenses and thereafter creating documents falsely describing the withdrawals as business expenses; and (c) moving money through third parties to pay for his personal expenses.  Count One, ¶ 3.

Count One describes the defendant's actions in detail and alleges that on multiple occasions the defendant was able to hide from the IRS the true nature of hundreds of thousands of dollars of cash payments for personal expenses that were taken from the defendant's various businesses. Count One, ¶¶ 4-11.  Likewise, the defendant was able to conceal certain income to himself from the IRS through structuring payments and misrepresenting on the corporate books the nature of the income.  Count One, ¶¶ 12-17.  Count One further charges the defendant with repeatedly providing the IRS with false personal and corporate tax returns to hide his receipt of certain personal income.

In short, Count One alleges a far reaching corrupt endeavor by the defendant to impede the IRS's ability to properly ascertain and collect the defendant's taxes, including the submission of false information to the IRS, a clear violation of Section 7212(a).

The defendant moves to dismiss Count One of the indictment for failing to properly charge a Section 7212(a) offense.  In doing so, the defendant urges this Court to adopt a rule prohibiting the government from charging a person who schemes to submit false tax information and conceal income from the IRS with a violation of the "omnibus" clause of Section 7212(a) unless the person acts "with knowledge that an [IRS] investigation is on-going or at least imminent."   Def. Mot. at 2.[1]

---

[1]      The defendant never attempts to define when a potential investigation becomes "imminent" or how courts and juries could apply such a standard.

The defendant's proposed reading of Section 7212(a) contradicts nearly thirty years of precedent allowing the government to charge persons with Section 7212(a) violations notwithstanding the absence of any IRS proceeding. *See generally United States v. Dain*, 2007 WL 4180157, No. 06-50446, at *2 (9th Cir. 2007) (affirming Section 7212(a) conviction and rejecting contention that defendant needed to be aware of an ongoing tax investigation to be convicted under Section 7212(a)) (unpublished opinion); *United States v. Massey*, 419 F.3d 1008, 1010 (9th Cir. 2005) (affirming Secction 7212(a) conviction and noting the government need not prove the defendant's awareness of an ongoing tax investigation in order to secure conviction); *United States v. Madoch*, 108 F.3d 761 (7th Cir. 1997) (affirming Section 7212(a) sentence where defendant-accountant filed false tax returns for customers); *United States v. Popkin*, 943 F.2d 1535, 1540-41 (11th Cir.1991) (affirming Section 7212(a) conviction although there was no proof defendant was aware of any ongoing tax investigation); *United States v. Williams*, 644 F.2d 696, 701 (8th Cir.1981) (affirming Section 7212(a) conviction and finding that assisting preparation and filing of false W-4 forms constituted endeavor to corruptly obstruct administration of internal revenue laws although there was no evidence of an ongoing tax investigation); *United States v. Crim*, 2007 WL 4563481, at *2 (E.D.Pa. Dec. 13, 2007) (holding that Section 7212(a) indictments do not require the government to allege or prove that a defendant was aware of a pending IRS investigation); *United States v. Willner*, 2007 WL 2963711 (S.D.N.Y. Oct. 11, 2007) (finding Section 7212(a) indictment based on "schem[e] to create a false paper trail of checks and divert income to a corporation in order to avoid taxes properly owing on income he himself earned" did not require notice of a pending tax investigation); *United States v. Molesworth*, 383 F.Supp.2d 1251, 1253-54 (D. Idaho 2005) (rejecting requirement that a defendant needed to be aware of a pending tax investigation and finding

that the filing of false tax forms properly alleged a Section 7212(a) violation); *United States v. Armstrong*, 974 F.Supp. 528, 535-36 & n. 14 (E.D.Va.1997) (finding Section 7212(a) does not require the defendant to be aware of a pending IRS investigation and finding proper a Section 7212(a) indictment based on "scheme over several years to avoid paying the correct amount of taxes.").

In addition, the defendant's position is premised on a Sixth Circuit case that has been limited to its facts. As will be demonstrated, the defendant's position should be rejected. Section 7212(a) may be violated regardless of whether a tax investigation exists and, obviously, therefore regardless of a defendant's knowledge of an investigation or potential investigation.

### B.    Argument

In support of his argument, the defendant relies, almost singularly, on *United States v. Kassouf*, 144 F.3d 952 (6th Cir. 1998). The defendant, however, misapprehends the scope of the holding outlined in *Kassouf*.

In *Kassouf*, the government charged a defendant with obstructing the IRS's ability to determine the tax consequences of certain transactions by failing to adequately maintain records. *Id*. at 953. The government did not allege that the defendant knowingly supplied false tax information to the IRS or that he had a legal obligation to keep records. *Id*. at 954. The Sixth Circuit held that, where the conduct constituting obstruction is "legal (such as failure to maintain records) and occurred long before an IRS audit, or even a tax return was filed" and any impact on the IRS is "speculative," the conduct is too remote to trigger criminal exposure under the omnibus clause of Section 7212. *Id*. at 957. The Sixth Circuit explained that "it would be highly speculative to find conduct such as the destruction of records, which might or might not be needed, in an audit which

4

might or might not ever occur, is sufficient" to violate Section 7212(a), "particularly where the statute may impose liability for otherwise lawful conduct."  *Id*. at 958. The Court recognized previous cases upholding Section 7212(a) convictions for conduct committed in the absence of any IRS investigation, but it "decline[d] to extend their holdings to reach *the conduct involved in this case.*" *Id*. at 956 (emphasis added).  Thus, on its face, *Kassouf* dealt with a very particular situation in which all of the conduct alleged was legal at the time that it occurred (and did not include the filing of false tax returns) and the Sixth Circuit itself noted its decision was specific to the facts of the case.

Since *Kassouf*, the Sixth Circuit itself has stressed the limited scope of the *Kassouf* ruling. In *United States v. Bowman*, 173 F.3d 595 (6th Cir. 1999), decided just a year after *Kassouf*, a defendant was charged with violating the omnibus clause of Section 7212(a) by deliberately filing false tax forms in an effort to force IRS investigations of other taxpayers. *Id*. at 596-597.  Although no IRS proceeding or investigation was ongoing at the time the defendant submitted the false tax forms, the Sixth Circuit affirmed his conviction under the "omnibus" clause. *Id*. at 599-600. The *Bowman* court held that "*Kassouf* must be limited to its precise holding and facts," situations where the underlying conduct was lawful, involved no misrepresentation to the IRS, and its impact on the administration of the revenue laws was entirely speculative. *Id*. at 599-600.  Because the defendant in *Bowman* deliberately and unlawfully filed false tax information, the Sixth Circuit upheld his Section 7212(a) conviction despite the absence of an IRS investigation.  Much like the defendant in *Bowman*, defendant Christopher Kelly has engaged in an unlawful scheme to conceal income and file false tax returns, the impact of which is manifest on the conduct of IRS operations.  Thus, under the Sixth Circuit's own reasoning, the *Kassouf* ruling would not apply to the instant case and,

instead, prosecution of defendant Kelly would be appropriate under *Bowman*.  Indeed, under

*Bowman*, there is no need for any tax investigation to exist or be imminent in order for a defendant

to be prosecuted under Section 7212(a).

Anticipating the government's position, the defendant insists that *Bowman* merely applied

an "exception" to the *Kassouf* rule found in Tax Department Directive No. 77, which encourages

Section 7212(a) prosecutions for large-scale obstructive conduct involving the returns of third

parties.  The defendant also claims that the Sixth Circuit has "emphatically" repeated the *Kassouf*

rule in *United State v. McBride*, 362 F.3d 360, 372 (6th Cir. 2004), a case subsequent to *Bowman*.

Neither of the defendant's claims have merit.  First, *Bowman* never even mentioned Tax Department

Directive No. 77 in reasoning that *Kassouf* should be limited to its facts and any fair reading of

*Bowman* precludes the position the defendant now asks this Court to adopt.  Second, *McBride* did

not "emphatically" reassert the *Kassouf* rule but only briefly cited *Kassouf* in upholding a Section

7212(a) conviction.  *McBride*, 362 F.3d at 372.  In fact, it appears in *McBride* that the issue of

whether proof of an ongoing IRS investigation is necessary was not challenged and the Sixth

Circuit's *Bowman* decision was not even discussed. *Id.*  In fact, in many of the cases cited below,

courts considering the impact of *Bowman* on *Kassouf* have not even mentioned the *Kassouf* citation

in *McBride*.

To the extent that somehow *Bowman* and *Kassouf* could be read to conclude that the Sixth

Circuit would require notice of an IRS investigation in defendant Kelly's case, this Court should

decline to adopt such a rule.  It is telling that no other court has embraced *Kassouf* whereas several

have specifically rejected it. *See United States v. Dain*, 2007 WL 4180157, No. 06-50446, at *2 (9th

Cir. 2007) (finding reliance on *Kassouf* "utterly devoid of merit" because "'the law of this circuit

establishes that the government need not prove that the defendant was aware of an ongoing tax investigation to obtain a conviction under §7212(a)'") (unpublished opinion); *United States v. Crim*, 2007 WL 4563481, at *2 (E.D.Pa. Dec. 13, 2007) (holding that Section 7212(a) indictments do not require the government to allege or prove that a defendant was aware of a pending IRS investigation); *United States v. Willner*, 2007 WL 2963711 (S.D.N.Y. Oct. 11, 2007) (questioning the *Kassouf* ruling and finding Section 7212(a) indictment based on "schem[e] to create a false paper trail of checks and divert income to a corporation in order to avoid taxes properly owing on income he himself earned" did not require notice of a pending tax investigation); *United States v. Molesworth*, 383 F.Supp.2d 1251, 1253-54 (D. Idaho 2005) (finding that *Bowman* expressly limited *Kassouf* to its facts, rejecting a requirement that a defendant needed to be aware of a pending tax investigation, and finding that the filing of false tax forms properly alleged a Section 7212(a) violation); *United States v. Armstrong*, 974 F.Supp. 528, 535-36 & n. 14 (E.D.Va.1997) (rejecting district court opinion in *Kassouf* and finding Section 7212(a) does not require the defendant to be aware of a pending IRS investigation and finding proper a Section 7212(a) indictment based on "scheme over several years to avoid paying the correct amount of taxes.").[2]

In fact, the government, and presumably the defense since they cite none, has been unable to find a single case that has considered *Kassouf* and adopted its holding.  In fact, the opposite has

---

[2]    Although the Seventh Circuit has not specifically addressed *Kassouf*, the Seventh Circuit Pattern Jury Instructions issued in 1999, a year after the *Kassouf* opinion, are notable in that they define the elements for a Section 7212 jury charge and do not require the government to prove either the existence or a defendant's awareness of an ongoing tax investigation in order for a defendant to be found guilty under Section 7212.  *See* 1999 Seventh Circuit Pattern Crim. Jury Instructions, at pgs. 423 to 427.  Rather, a defendant may be found guilty under Section 7212 for corruptly endeavoring to obstruct or impede the due of administration of justice, with the "due administration of justice" defined, in among other ways, as the IRS carrying out its lawful functions in the "ascertaining of income [or] the computing, assessing, and collecting of income taxes."  *Id*.

occurred.  Every case to consider *Kassouf* has either rejected its holding or noted the limitation of the holding to the specific facts of the case.

In addition, the legal underpinnings of the *Kassouf* ruling are seriously flawed.  The Sixth Circuit's opinion in *Kassouf* relied heavily on the Supreme Court's decision in *United States v. Aguilar*, 515 U.S. 593 (1995), which construed the terms of the general obstruction of justice statute: Title 18 U.S.C. § 1503.  The Court in *Aguilar* held that a prosecution under Section 1503's omnibus clause required proof that a defendant knew his actions would likely obstruct a judicial proceeding. *Id*. at 599.  The *Aguilar* opinion relied on *Pettibone v. United States*, 148 U.S. 197, 207 (1893), an earlier decision construing a predecessor statute to Section 1503.  Language of the omnibus clause in the earlier version of the Section 1503 statute prohibited the obstruction of "the due administration of justice therein" (i.e., in an ongoing proceeding). *Id*. at 197.

By contrast, the text of Section 7212's omnibus clause more broadly punishes corrupt interference with due administration of "this title," that is, the Internal Revenue Laws codified in Title 26 of the United States Code.  Had Congress wished to confine Section 7212(a) to an IRS investigation or audit, it could have included the same reference to proceedings that appears in Section 1503 or other appropriately narrowing language.  It did not.  Similarly, the omnibus provision of Section 1503 is "qualified and limited by the enumeration of specific judicial functions concerned with the 'administration' of justice in the preceding portion of the section." *See Haili v. United States*, 260 F.2d 744, 745-746 (9th Cir. 1958). *See also Willner*, 2007 WL 2963711 (S.D.N.Y.) (questioning the similarity between Section 1503 and Section 7212 because the omnibus provision in the former "follows a long list of specific prohibition of conduct that interfere with actual judicial proceedings.").  Section 7212 contains no analogous limitations on its omnibus

provision and therefore it should not be construed as narrowly as Section 1503.  *See United States v. Reeves*, 752 F.2d 995, 999 (5th Cir. 1985) ("[T]he narrow circumstances in which section 1503 applies have no parallel in cases involving section 7212(a)."). Thus, the Sixth Circuit's reliance in *Kassouf* on cases analyzing Section 1503 is in error.[3]

Circuit courts have consistently favored a very broad reading of Section 7212's omnibus clause, rejecting countless efforts to limit its scope.  *See United States. v. Kelly*, 147 F.3d 172, 175 (2d Cir. 1998) (rejecting argument that Section 7212(a) requires threatening or harassing conduct because the omnibus clause is significantly broader than the first clause of Section 7212(a)); *United States v. Mitchell*, 985 F.2d 1275, 1279 (4th Cir. 1993) (rejecting argument that "corruptly" requires bribery, solicitation or subornation because the omnibus clause's language favors "a broad rather than narrow construction); *Popkin*, 943 F.2d at 1539 (holding that the omnibus clause "greatly expands the reach of the statute . . . . And here, the prohibited act need not be [as defendant argued] an effort to intimidate or impede an individual officer or employee."); *United States. v. Kuball*, 976 F.2d 529 (9th Cir. 1993) (Section 7212(a) is "aimed at prohibiting efforts to impede 'the collection of one's taxes, the taxes of another, or the auditing of one's or another's tax records'") (quoting *United States v. Reeves*, 752 F.2d 995 (5th Cir.1985)); *Williams*, 644 F.2d at 701 ("we agree with the Government that the broad language of §7212's omnibus clause demands a correspondingly broad construction"). Although these cases do not consider the particular question of whether the omnibus clause requires notice of an IRS investigation, two district courts have reasoned that these

---

[3] Nor can defendant even argue that his rule is necessary to prevent Section 7212(a) from penalizing innocent conduct, because the government must still show that the defendant acted "corruptly": *i.e.*, that the defendant acted with the intent to obtain an unlawful benefit for himself or another. *See United States v. Valenti*, 121 F.3d 327, 331-32 (7th Cir. 1997); *Popkin*, 943 F.2d at 1539-40; *Reeves*, 752 F.2d at 1001.

cases broad construction of Section 7212(a)'s omnibus clause is inconsistent with the *Kassouf* rule. *See Willner*, 2007 WL 2963711 (S.D.N.Y.); *Armstrong*, 974 F. Supp. at 537.

Despite the clear limitations of the *Kassouf* ruling, its rejection by every court to consider it, and the fact courts have routinely recognized a broad reading of Section 7212(a), the defendant suggests the legislative history of Section 7212(a)'s omnibus clause demonstrates that the omnibus clause was "still intended to involve threats against investigating agents, and with some knowledge that an investigation was underway." Def. Mot. at 3-4. The defendant's argument is nothing new and has been rejected by those courts that have considered it. As several courts have noted, the scant legislative history cited by defendant reveals nothing about the scope of the omnibus clause because it only discusses Section 7212's first clause. *See United States v. Mitchell*, 985 F.2d 1275, 1279 (4th Cir. 1983) ("[defendant's] contention that the legislative history of 7212 clearly limits the scope of the statute to corrupt solicitation or subornation is unpersuasive . . . . We do not find the history particularly enlightening or dispositive as to Congress's understanding of the precise scope of the omnibus provision."); *Williams*, 664 F2d at 699 fn.13 ("[t]his legislative history is virtually useless with respect to the issue before us, however, because it is wholly silent on [Section] 7212's omnibus clause"). In short, the legislative history of Section 7212 does nothing to support the defendant's suggestion that Section 7212(a)'s omnibus provision requires proof that the defendant knew of an ongoing tax investigation or, for that matter, that a tax investigation even needs to exist in the first instance.

In addition to legislative history, the defendant similarly argues that Tax Department Directive No. 77 supports his narrow reading of the omnibus clause. Although that internal directive offers some suggestion for what purpose Section 7212 "should" be used, courts have correctly noted

that it says nothing about the actual scope of the omnibus clause and does not restrict the possible application of Section 7212. *See United States v. Stein*, 429 F. Supp.2d 633, 638-39 (S.D.N.Y. 2006) (rejecting claim that prosecutors violated directive in charging defendant in a manner inconsistent with the directive because internal department guidelines "'provide no substantive rights to criminal defendants'") (quoting *Kelly*, 147 F.3d at 176); *United States v. Hubbell*, 11 F. Supp.2d 25, 38 (D.D.C. 1998) (rejecting claim that the directive prohibits prosecution under Section 7212 for tax evasion because "[n]o mandatory words are used, even though the DOJ Manual is replete with directives framed in mandatory language); *Armstrong*, 974 F. Supp. at 539 (concluding that, notwithstanding the absence of a pending IRS investigation, "legislative history and previous DOJ interpretation of §7212(a) do not prevent the court from applying that statute to defendant's conduct"). In addition, as the defendant well knows in the instant case based on his contact with it, the Department of Justice's Tax Division reviewed the instant case and authorized prosecution under Section 7212(a).

In sum, the defendant has recycled a decades-old argument with regard to Section 7212(a) that has been repeatedly rejected by courts that have considered the argument. There is good reason to reject the defendant's proposed reading of Section 7212(a). Adopting the defendant's position would substantially limit the scope of the omnibus clause because it would exclude any case in which a person crafted a scheme to defeat tax collection but completed the scheme before an investigation or audit was initiated.[4] Section 7212(a)'s broad coverage is necessary "[i]n a system

---

[4] Indeed, the defendant's reading would exclude "by force" violations of Section 7212(a) for assaults on IRS officers conducting routine functions of the IRS unless there was an open tax investigation of the assailant, an outcome that makes no sense given the plain language of the statute.

of taxation such as ours which relies principally on self-reporting . . . to prevent taxpayers and their helpers from gaining unlawful benefits by employing that 'variety of corrupt methods' that is 'limited only by the imagination of the criminally inclined.'" *Popkin*, 943 F.2d at 1540 (citation omitted).

The defendant's principal case in support of his argument, *Kassouf*, has been severely limited by its own circuit and is factually distinct from the instant case. Indeed, the facts of the instant case are similar to the Sixth Circuit's decision in *Bowman* which noted the propriety of Section 7212(a) prosecutions where a defendant submits fraudulent tax information to the IRS. In addition, *Kassouf* has been routinely rejected by other courts to consider it. Those courts have noted Section 7212(a) should be given a broad reading and that there is no requirement a defendant know of a pending tax investigation in order to be charged under Section 7212(a). Indeed, there is no requirement that there exist a pending or imminent tax investigation to charge a defendant under Section 7212(a), regardless of the defendant's knowledge.

For all of those reasons, as well as the others outlined above, the defendant's motion to dismiss Count One for failure to properly charge an offense should be denied.

## II.     DEFENDANT'S MOTION FOR IMMEDIATE DISCLOSURE OF EXCULPATORY INFORMATION

The defendant move for immediate disclosure of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972), material including but not limited to: (a) witness statements favorable to the defendant; (b) specific evidence that detracts from the credibility of government evidence; (c) exculpatory evidence related to the defendants; (d) favors provided to government witnesses; (e) any information related to tax deductions available to the defendant; and (f) addresses for effectively every person interviewed by the government.

The government understands its *Brady* obligation to produce exculpatory evidence to the defense. To the extent that the government becomes aware of *Brady* information it will provide it to the defense.

Most, if not essentially all of the defendant's discovery requests, are requests for *Giglio* impeaching information. The government is aware of and will comply with its *Giglio* obligations to turn over information that impeaches its witnesses. Specifically, with respect to the persons the government intends to call in its case-in-chief, the government will turn over: prior inconsistent statements of the particular witness, evidence concerning a witness's addiction to alcohol or drugs, promises of reward to a witness, statements of advice concerning future prosecutions, including proffer letters and non-subject letters, promises of leniency or favorable treatment, grants of immunity, criminal records, things of value provided to witnesses (other than statutory witness fees, costs of transporting witnesses, and the like), prior acts of misconduct which the witness has acknowledged or which have been established to the satisfaction of the government, plea agreements, results of polygraph examinations, and placement in a witness relocation or protection program.[5] *Cf. United States v. Heidecke*, 683 F. Supp. 1211, 1215 n. 5 (N.D.Ill. 1988).

Under *Giglio* the government has no obligation to provide any such information prior to trial. *Kompare v. Stein*, 801 F.2d 883, 890 (7th Cir. 1986); *United States v. Dotson*, 546 F.2d 1151 (5th Cir. 1977). Even though the government will produce the *Giglio* information in advance of testimony, the type of information sought by these requests requires little or no warning to be used effectively, and therefore under the law need not be produced far in advance. *See United States v.*

---

[5]     Witnesses may be provided with sandwiches or beverages if meetings occur during meal hours.

*Rinn*, 586 F.2d 113, 119 (9th Cir. 1978), *cert. denied*, 441 U.S. 931 (1979); *United States v. Frumento*, 405 F.Supp. 23, 32 (E.D. Pa. 1975).

In fact, the government is not even required to provide *Brady* material ahead of trial. While the defendant requests immediate disclosure of *Brady* and *Giglio* information, both *Brady* and *Giglio* and their progeny do *not* require immediate disclosure to the defense of all information the defense deems favorable. Both the Supreme Court and this Circuit have consistently rejected the very premise of the defendant's motion, and have held that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). *See Wardius v. Oregon*, 412 U.S. 470, 474 (1973); *United States v. Agurs*, 427 U.S. 107-112 (1976); *United States v. Higgins*, 75 F.3d 332, 335 (7th Cir. 1996) ("There is no constitutional right to pretrial discovery.") Indeed, the Supreme Court explained in *United States v. Bagley*, 473 U.S. at 667:

> An interpretation of *Brady* to create a broad, constitutionally required right of discovery "would entirely alter the character and balance of our present systems of criminal justice." *Giles v. Maryland*, 386 U.S. 66, 117 (1967) (dissenting opinion). Furthermore, a rule that the prosecutor commits error by any failure to disclose evidence favorable to the accused, no matter how insignificant, would impose an impossible burden on the prosecutor and would undermine the interest in the finality of judgments.

*Id.* at 675 n.7.

Even a cursory reading of the relevant case law reveals that *Brady* does not impose a burden on the prosecution to produce every piece of evidence that could be favorable to the defense. *Id.* Instead, *Brady* is based on due process protections requiring the prosecution "only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *Id.* at 675. But while the prosecution must disclose this evidence to the defense, "disclosure need

14

not precede trial." *Higgins*, 75 F.3d at 335 (*citing Weatherford*, 429 U.S. at 559; *United States v. Agurs*, 427 U.S. 97, 107-12 (1976); *Buckley v. Fitzsimmons*, 20 F.3d 789, 797 (7th Cir. 1994); *United States v. Xheka*, 704 F.2d 974, 981 (7th Cir. 1983); *United States v. Ziperstein*, 601 F.2d 281, 291 (7th Cir. 1979)). The Seventh Circuit explained that, "[d]isclosure even in mid-trial suffices if time remains for the defendant to make effective use of the exculpatory material." *Id.* Thus, to claim that *Brady* requires pretrial discovery of all favorable evidence is to misstate the central body of case law on this issue. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Agurs*, 427 U.S. at 109-110.

In *United States v. Agurs*, 427 U.S. at 97, the Supreme Court examined the problem of evaluating materiality in the pretrial setting and rejected the notion that courts could "focus on the impact of the undisclosed evidence on the defendant's ability to prepare for trial." *Id*. at 112 n.20. The Court opined that:

> Such a standard would be unacceptable for determining the materiality of what has been generally recognized as "*Brady* material" for two reasons. First, that standard would necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense. Second, such an approach would primarily involve an analysis of the adequacy of the notice given to the defendant by the State, and it has always been the Court's view that the notice component of due process refers to the charge rather than the evidentiary support for the charge.

*Id.* In short, the law is clear that the defense is not entitled to every item of evidence it might consider favorable and is not even entitled to *Brady* information prior to trial.

The government has already turned over the majority of the documents it is has obtained during the defendant's tax investigation. It understands its obligations under *Brady* and *Giglio* and has already informed the defendant it will provide *Giglio* and Jenks Act information three weeks

prior to trial.  It is the government's position that this time frame more than meets the requirements of *Giglio* and is well ahead of the statutory Jenks Act requirements.  To the extent that the defendant's demands require disclosure broader than that required under *Brady* and *Giglio* or on a different time frame, they should be denied.

### III.    MOTION REGARDING 404(B) EVIDENCE

The defendant filed a motion for an order requiring the government to give notice of its intent to use other crimes, wrongs, or bad acts evidence eight weeks before trial.  The government acknowledges its obligation to give notice under Rule 404(b), which provides that the government should provide reasonable notice of its intent to use such evidence in advance of trial.  Accordingly, as stated in the government's initial discovery letter to the defendant, the government will submit its notice no later than three weeks prior to the trial in the case.  The government should not be required to given notice any earlier than three weeks prior to trial.

While the government will attempt to provide notice of all Rule 404(b) evidence it plans to introduce, the government reserves the right to introduce additional Rule 404(b) evidence not contemplated at the time the government makes its pretrial disclosure, as necessary to rebut evidence introduced or arguments made by defendants.  Should events at trial require the government to use additional Rule 404(b) evidence that the government has not already included in its pretrial notice, the government will seek leave to use such additional evidence at that time.

### IV.    DEFENDANT'S MOTION TO PRODUCE AND PRESERVE AGENTS' NOTES

The defendant moves to both preserve agent notes and *require* production of agent notes of interviews.  The government has already informed its agents to preserve their notes of interviews.  To the extent the defendant requests automatic disclosure of these notes, the motion should be

16

denied. Indeed, the defendant does not cite a single case requiring the disclosure of such notes and, in fact, the case law is clear that all but in the most extraordinary circumstances such notes are not discoverable.

Case law among circuits is clear that agent notes are generally not discoverable. *United States v. Andersson*, 813 F.2d 1450, 1459 (9th Cir. 1987) (rough surveillance notes not discoverable); *United States v. Mora*, 994 F.2d 1129, 1139 (5th Cir. 1993) (an agent's "scattered jottings" not discoverable); *United States v. Mena*, 863 F.2d 1522, 1529 (11th Cir.), *cert. denied*, 110 S.Ct. 109, 110 (1992) (interview notes which are merely fragmentary not discoverable); *United States v. Bastanipour*, 697 F.2d 170, 174-75 (7th Cir. 1982) (handwritten versions of typed memoranda which do not differ materially from the typed version not discoverable); *accord United States v. Starnes*, 644 F.2d 673, 681 (7th Cir. 1981).

The Seventh Circuit has held that handwritten notes or rough drafts prepared by agents that are subsequently transcribed and made part of a final report are not discoverable under the *Jencks* Act. In *United States v. Starnes*, 644 F.2d 673, 681 (7th Cir. 1981), the Court stated that such notes were discoverable only if "the notes were a substantially verbatim transcript of the [witness'] remarks, or were his own written statement adopted or approved by him." *See* 8 U.S.C. § 3500(e)(1) and (2); *see also United States v. Harris*, 542 F.2d 1283, 1292-93 (7th Cir. 1976); *United States v. Consolidated Packaging Corp.*, 575 F.2d 117, 129 (7th Cir. 1978). In *United States v. Bastanipour*, 697 F.2d 170, 174-175 (7th Cir. 1982), the Court stated that an agent's handwritten draft of an interview report need not be retained after the report was typed. This holding was based on the premise that the typed report contained all the information in the handwritten originals. *See also United States v. Muhammad*, 120 F.3d 688, 699 (7th Cir. 1997) (holding that defendant "had no legal

basis to compel the Government to produce [an agent's] original interview notes that were subsequently incorporated into the FBI 302. A defendant is not entitled to an agent's notes if the agent's report contains all that was in the original notes."); *Accord Killian v. United States*, 368 U.S. 231, 242 (1961); *United States v. Balistriere*, 779 F.2d 1191, 1218-20 (7th Cir. 1985).

Moreover, Rule 16(a)(2) clearly exempts from discovery "reports, memoranda, or other internal government documents made by the attorney for the government or other government agents in connection with the investigation or prosecution of the case." Accordingly, the government will resist any attempt by the defendants to obtain unwarranted discovery of internal file materials. The government will provide final typed or written statements of its trial witnesses, including agents, in accordance with Rule 3500 and the dictates of *Brady* and *Giglio*. The defendants are entitled to no more.

Although the government is not aware of any material discrepancies between information contained in agents' notes and subsequent reports made in reliance on these notes, in its original discovery letter to defendants, the government informed defendants that it will preserve the written notes of government agents. To the extent that the defendant is requesting discovery of agents' notes, his motion should be denied as it is wholly unsupported and, in fact, directly contradicted by clear Seventh Circuit precedent.

## V.    DEFENDANT'S MOTION FOR PRODUCTION OF EXPERT TESTIMONY

The defendant seeks notice of the government's intention to introduce testimony pursuant to Federal Rules of Evidence 702, 703, or 705. Under Fed. R. Crim. Proc. 16(a)(1)(E), at a defendant's request, the government shall disclose to the defendant a written summary of testimony the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during

its case in chief at trial.  As represented in its initial discovery letter to defense counsel, should the government seek to introduce expert testimony, the government will make such disclosures four weeks prior to trial, provided defendants agree to make reciprocal expert disclosures four weeks prior to trial.  Additionally, as required by the rule, the government will describe the witness' opinions, the bases and the reasons therefor, and the witness' qualifications.  The government is aware of its obligations pursuant to Fed. R. Crim. Pro. 16(a)(1)(D) to disclose the reports of examinations and tests and will take care to make all disclosures required by the rule.  The government hereby makes reciprocal discovery requests for disclosure of defense evidence pursuant to Fed. R. Crim. P. 16(b).

## VI.    <u>CONCLUSION</u>

WHEREFORE, for the reasons stated above, the government respectfully requests this Court deny the defendant's pretrial motions as argued above.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By:    <u>s/ Reid Schar</u>
REID SCHAR
CHRISTOPHER NIEWOEHNER
Assistant United States Attorney
219 S. Dearborn St., 4th Floor
Chicago, Illinois  60604
(312) 353-5300

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that the following documents:

## GOVERNMENT'S CONSOLIDATED RESPONSE TO
## DEFENDANTS' PRETRIAL MOTIONS

were served on June 2, 2008, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

By:     s/ Reid Schar
REID SCHAR
CHRISTOPHER NIEWOEHNER
Assistant United States Attorney
312-353-8897